LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ARTURO CARAVANTES,
*on behalf of himself,*
*FLSA Collective Plaintiffs*
*and the Class,*

              Plaintiff,

              v.

DEE GEE REST LLC
d/b/a RISTORANTE DEGREZIA,
JOSEPH DAPRILE,
and BIBI DAPRILE,

              Defendants.

---

Case No:

**CLASS AND**
**COLLECTIVE**
**ACTION COMPLAINT**

       Plaintiff, ARTURO CARAVANTES ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, DEE GEE REST LLC d/b/a RISTORANTE DEGREZIA (the "Corporate Defendant"), JOSEPH DAPRILE and BIBI DAPRILE (the "Individual Defendants," and collectively with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium, (3) unpaid wages due to time shaving, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium, (3) unpaid wages due to time shaving, (4) tips unlawfully misappropriated by Defendants; (5) unlawfully withheld gratuities resulting from an invalid tip pooling scheme instituted and mandated by Defendants, (6) statutory penalties, (7) liquidated damages and (8) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to the New York State Human Rights Law, ("NYSHRL"), he is entitled to recover from Defendants for discrimination based on race and national origin: (1) compensatory damages.

4.      Plaintiff further alleges that, pursuant to the New York State Human Rights Law, ("NYSHRL"), he is entitled to recover from Defendants for discrimination based on gender: (1) compensatory damages.

5.      Plaintiff further alleges that, pursuant to the New York City Human Rights Law, ("NYCHRL"), he is entitled to recover from Defendants for discrimination based on race and national origin: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

6.      Plaintiff further alleges that, pursuant to the New York City Human Rights Law, ("NYCHRL"), he is entitled to recover from Defendants for discrimination based on gender: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.      Plaintiff, ARTURO CARAVANTES, for all relevant time periods, was a resident of Queens County, New York.

10.     The Defendants own and operate an Italian restaurant doing business under the trade name "Ristorante DeGrezia," located at 231 East 50th Street, New York, NY 10022 ("DeGrezia" or the "Restaurant").

11.     DEE GEE REST LLC d/b/a RISTORANTE DEGREZIA is a domestic business corporation organized under the laws of the State of New York with an address for service of process and a principal place of business located at 231 East 50th Street, New York, NY 10022.

10.     Individual Defendant, JOSEPH DAPRILE is an owner and principal of Corporate Defendant. Defendant  JOSEPH DAPRILE exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant JOSEPH DAPRILE exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those

of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant JOSEPH DAPRILE directly regarding any of the terms of their employment, and Defendant JOSEPH DAPRILE had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand employees for performing tasks improperly.

11.    Individual Defendant, BIBI DAPRILE is an owner and principal of the Corporate Defendant. Defendant BIBI DAPRILE exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant BIBI DAPRILE frequently visited the Restaurant.. She exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant BIBI DAPRILE directly regarding any of the terms of their employment, and Defendant BIBI DAPRILE would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

12.    At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

13.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including

but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

15.      At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek and (ii) compensation for all hours worked due to a policy of time shaving.

16.      Furthermore, a subclass of all FLSA Collective Plaintiffs who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Defendants were not entitled to deduct any tip credits from the wages earned by the Tipped Subclass, because they failed to satisfy all FLSA requirements for taking a tip credit. Specifically, Defendants (i) failed to provide proper notice to the Tipped Subclass that a tip credit was being claimed, (ii) failed to indicate the tip credit allowance taken on weekly wage statements given to Plaintiffs and FLSA Collective Plaintiffs, (iii) required Plaintiffs and FLSA Collective Plaintiffs to spend at least two (2) hours of each shift engaged in non-tipped activities, (iv) allowed management to retain delivery fees without providing notice to customers that management was retaining such fees, and (v) instituted and mandated an invalid tip-pooling scheme not agreed upon by tipped employees, whereby Plaintiff and FLSA Collective Plaintiffs were required to share tips earned with non-tipped employees, and managerial employees illegally took a portion of the total amount in tips earned by Plaintiffs and FLSA Collective

Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt

that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of waiters, runners, and busboys ("Tipped Subclass") who also number more than forty (40).

21.      Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay minimum wage, (ii) failing to pay the overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek (iii) time-shaving, (iv) retaining delivery fees charged to customers without providing notice to customers that management was retaining such fees, (v) unlawfully withholding gratuities earned by Class members through an invalid tip pooling scheme, and (vi) failing to provide wage statements that were in compliance with requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.      Furthermore, a subclass of all Class Members who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiffs and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL, including Defendants' (i) failure to provide notice that a tip credit was being claimed, (ii) failure to record the tip credit allowance taken on periodic wage statements given to Plaintiffs and Tipped Subclass members, (iii) policy of requiring Plaintiffs and Tipped Subclass members to spend two

twenty percent (20%) of each shift engaged in non-tipped activities, (iv) policy of allowing management to retain delivery fees without providing notice to customers that management was retaining such fees, and (v) implementation of an invalid tip-pooling scheme not agreed upon by tipped employees, whereby Plaintiff and Tipped Subclass Members were required to share tips earned with non-tipped employees, and managerial employees illegally took a portion of the total amount in tips earned by Plaintiffs and Class Members.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants provided wage statements informing Plaintiff and Class members of the amount of tip allowance taken for each payment period;

e)  Whether Defendants required Plaintiff and Class members to perform non-tipped work for more than two (2) hours, or twenty percent (20%) of each shift;

f)  Whether Defendants permitted management to retain delivery fees without notifying customers that such fees would be retained by management;

g)  Whether Defendants established the tip payment structure for Class members without the agreement or consent of the Class members;

h)  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and Class members were required to share tips earned with non-tipped employees;

i)  Whether Defendants mandated an unlawful tip-pooling scheme whereby management illegally retained a portion of tips earned by Plaintiff and class members;

j)  Whether Defendants provided to Plaintiff and Class members annual wage notices, as required under the New York Labor Law

k)  Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law;

l)  Whether Defendants paid Plaintiff and Class members the federal and state minimum wage for all hours worked;

m) Whether Defendants properly compensated Plaintiff and Class members overtime premiums for all hours worked in excess of forty (40) under state and federal law; and

n)  Whether Defendants caused time-shaving by paying Plaintiff and Class members only for those hours during which they were scheduled to work, rather than for the actual hours that they worked.

## STATEMENT OF FACTS

27.    On or about October 15, 2015, Plaintiff ARTURO CARAVANTES was hired by Defendants to work as a busboy and delivery person at Ristorante DeGrezia, located at 231 East 50th Street, New York, NY 10022. Plaintiff's employment was terminated by Defendants on April 7, 2016.

28.    Throughout his employment by Defendants, Plaintiff's approximate hours were from 4:00 p.m. until 11:00 p.m., six (6) days per week. Plaintiff would frequently work longer shifts that lasted from 4:00 p.m. until 12:30 p.m. Plaintiff worked a total of approximately forty-three (43) - forty-five (45) hours per week throughout his employment by Defendants. Throughout Plaintiff's employment by Defendants, he was never allowed any mid-shift breaks to eat. Similarly, FLSA Collective Plaintiffs and Class members were not provided with any mid-shift breaks to eat by Defendants.

29.    From the start of his employment on or about October 15, 2015 until on or about December 31, 2015, Plaintiff was compensated at a straight-time base hourly rate of $5.00, even for those hours that he worked in excess of forty (40) each workweek. Then, starting from January 1, 2016 until April 7, 2016, the day on which Defendants terminated Plaintiff's employment, Plaintiff was compensated at a straight-time base hourly rate of $7.50, even for those hours that he worked in excess of forty (40) each workweek. Similarly, FLSA Collective Plaintiffs and Class members were paid at straight-time base hourly rates for all hours worked, even for those hours in excess of forty (40) each workweek.

30.     From the start of his employment on or about October 15, 2015 until on or about December 31, 2015, Defendants compensated Plaintiff at an invalid "tip credit" minimum wage, less than the prevailing federal and New York State minimum wages. From January 1, 2016 until April 7, 2016, the day on which Defendants terminated Plaintiff's employment, Plaintiff was compensated at a straight-time base hourly rate that was below the prevailing New York State minimum wage. Similarly, other Tipped Subclass members were compensated by Defendants at base hourly rates below the prevailing federal and state minimum wages.

31.     Plaintiff and Tipped Subclass members did not receive any notice that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed that Defendants were claiming a tip credit allowance, and never received any notice of the amount of tip credit allowance taken for each payment period during their employment, or of the hourly rate of tip credit deduction.

32.     Defendants failed to keep track of the daily amount in tips earned by Plaintiff and Tipped Subclass members. Defendants also failed to maintain proper employment records, as required by the FLSA and NYLL. Specifically, Defendants failed to record the tip allowance claimed on compensation earned by Plaintiff and the Tipped Subclass on the wage statements that they received. The wage statements issued to Plaintiff and the Tipped Subclass do not state the total amount of tip allowance taken, or the hourly rate of tip credit claimed. Although the wage statements provided to Plaintiff and the Tipped Subclass included amounts of "Credit Card Tips Owed" for each period and for the year to date, the amounts stated on the statements were inaccurate and did not correspond with the actual amount in tips earned at all times.

33.     Plaintiffs and Tipped Subclass members were required by Defendants and the DeGrezia management to participate in an invalid "tip pooling" scheme. Plaintiffs, FLSA

Collective Plaintiffs, and Class members never agreed upon their tip allocation percentage, which was assigned by management and not agreed upon mutually among tipped employees. Rather, Plaintiff and Tipped Subclass members were required to follow the tip payment structure instituted by Defendants. Under Defendants' scheme, captains, including Sebastiano [LNU] and John [LNU], who were not tipped employees, took from the tip pool. In fact, captains were awarded larger portions of the weekly tip pool than Plaintiff and other members of the Tipped Subclass were. Defendants also refused to allow Plaintiff, FLSA Collective Plaintiffs, and Class members to keep cash tips provided to them. Defendants appropriated such cash tips, and, instead, provided Tipped Subclass members with weekly checks in amounts that Defendants claimed corresponded to the cash tips each employee earned. However, the weekly checks received by Plaintiff and Tipped Subclass members were at all times substantially less the amount in tips actually earned by Plaintiff and Tipped Subclass members.

34.     Plaintiff and the Tipped Subclass were required to spend more than twenty percent (20%), or two (2) hours of each shift engaged in non-tipped activities. Specifically, Plaintiff and Tipped Subclass members were required to perform non-tipped tasks including, but not limited to vacuuming floors, refilling ice buckets, cleaning tables, ice buckets, bars, barriers inside the restaurant, faux plants, silverware, glasses, folding napkins, and building tables for more than twenty percent (20%), or two (2) hours of each shift.

35.     At all times relevant to this action, the invoices provided to customers by the DeGrezia Restaurant levied a ten percent (10%) mandatory "delivery fee." The invoices provided to customers contained no further explanation of these charges. Plaintiff and other delivery employees received no portion of the mandatory delivery fee, as the management

retained one hundred percent (100%) of the delivery fee. Prospective customers did not receive any notice, written or oral, that management would retain the delivery fee.

36.    Defendants failed to provide customers with an explicit written statement that the delivery fee was not a gratuity, and that no portion of such fee would be retained by the deliverer. As a result of Defendants' policy of not informing customers of their total retention of the delivery fee, Plaintiff and other delivery persons were deprived of tips that they would have earned had Defendants had notified customers that Plaintiff and the Tipped Subclass would not receive such fees.

37.    Although Plaintiff worked between forty-three (43) and forty-five hours (45) each week, he was only compensated by Defendants for working twenty-five (25) to thirty hours (30) each week, due to Defendants' policy of time-shaving. Although Defendants had an electronic check-in/check-out machine, it was almost continually out of order, as Defendants failed to maintain it properly. Instead of keeping accurate records of Plaintiff's hours, and paying him for all hours worked, Defendants instituted an illegal policy of time-shaving, refusing to compensate Plaintiff for up to twenty (20) hours that he worked during each workweek, resulting in unpaid wages. Similarly, FLSA Collective Plaintiffs and Class Members also suffered from Defendants' refusal to compensate employees for all hours worked, and were also illegally denied wages.

38.    Defendants never provided Plaintiff with wage notices, as required by the NYLL. Similarly, Class Members were never provided with any wage notices.

39.    At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage statements, as required by the NYLL. Plaintiffs and Class members received wage statements that did not accurately reflect the hours that they worked, as Defendants failed to accurately maintain such records.

40.     During Plaintiff's employment by Defendants, Defendants permitted managerial employees to foster a racially hostile work environment. Plaintiff, who is of Hispanic ancestry and Mexican nationality, frequently suffered severe discrimination on the basis of his race and national origin and related verbal abuse at the hands of his supervisors at DeGrezia.

41.     During Plaintiff's employment by Defendants, John [LNU], a captain who was the direct supervisor of Plaintiff and other busboys, frequently made statements to Plaintiff clearly exhibiting racial and ethnic animus to Plaintiff on the basis of his Mexican heritage. These statements included "Mexicans are going to get kicked out of this country," "You can't vote because you're illegal," and "I'm voting for Trump to get rid of you Mexicans." The pervasive animosity against Mexicans also resulted in Plaintiff never even being considered for a promotion to server, even though he was qualified for that position.

42.     During his employment by Defendants at DeGrezia, Plaintiff was the victim of sexual harassment by a managerial employee.

43.     During Plaintiff's employment by Defendants at DeGrezia, Sebastiano [LNU], a captain, would frequently direct inappropriate sexual comments at Plaintiff. Frequently, he would say to Plaintiff "Arrimate loca," a colloquial Spanish term typically used as a crude sexual advance.

44.     During Plaintiff's employment by Defendants at DeGrezia, Sebastiano [LNU] would also frequently initiate unwelcome and extremely inappropriate sexual contact with Plaintiff by touching Plaintiff's genitalia.

45.     During Plaintiff's employment by Defendants at DeGrezia, Plaintiff's health suffered as a result of the high levels of stress caused by the rampant racial discrimination and sexual harassment that he suffered while working at Defendants' restaurant. During February

2016, Plaintiff suffered severely from shingles, a condition that resulted from his job-related stress.

46.     Plaintiff was terminated by Defendants due to the racial discrimination and sexual harassment that he suffered on the job at the hands of managerial employees at DeGrezia.

47.     Defendants paid Plaintiff and the Tipped Subclass at "tip credit" rates below the prevailing federal and New York State minimum wages.  However, Defendants were not entitled to claim any tip credits under the FLSA or NYLL, because they (i) failed to provide notice that a tip credit was being claimed, (ii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiffs and Tipped Subclass members, (iii) implemented a policy of requiring Plaintiffs and Tipped Subclass members to spend at least two (2) hours, or twenty percent (20%) of each shift engaged in non-tipped activities, (iv) implemented a policy of allowing management to retain delivery fees without providing notice to customers that management was retaining such fees, and (v) mandated an invalid tip-pooling scheme not agreed upon by tipped employees, whereby Plaintiff and Tipped Subclass Members were required to share tips earned with non-tipped employees, and managerial employees illegally took a portion of the total amount in tips earned by Plaintiffs and Class Members.

48.     Defendants charged customers a delivery fee for each order delivered, but unlawfully failed to provide customers with any notice, written or oral, that such fee would be retained entirely by the DeGrezia management, rather than by Plaintiff and other delivery persons, thereby depriving Plaintiff and the Tipped Subclass of tips that they earned.

49.     Defendants unlawfully misappropriated tips earned by Defendants through a tip pooling scheme implemented by Defendants and management without the consent and approval of Plaintiff and the Tipped Subclass, whereby managers and non-tipped employees shared in the

tip pool.

50.     Defendants unlawfully failed to pay Plaintiff, the FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for hours they worked in excess of forty (40) each workweek.

51.     Defendants unlawfully failed to pay Plaintiff, the FLSA Collective Plaintiffs, and members of the Class for all the hours that they worked, due to their policy of time-shaving.

52.     At no time during the relevant time periods did Defendants provide Plaintiff or Class members with wage notices or proper wage statements as required by NYLL. Plaintiff and Class members received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked. With respect to the Tipped Subclass, Defendants also failed to disclose the amount of tip credit claimed in each pay period or the hourly amount of tip credit claimed on the wage statements provided.

53.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF

## PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

54.     Plaintiff realleges and reavers Paragraphs 1 through 53 of this class and collective action Complaint as if fully set forth herein.

55.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

56.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

58.     At all relevant times, the Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiff and Tipped Subclass for their hours worked. As factually described above, Defendants were not entitled to claim any tip credits under FLSA with respect to the Tipped Subclass.

59.     At all relevant times, the Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for hours worked in excess of forty (40) hours per workweek.

60.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours that he worked each week.

61.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

63.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

64.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, unpaid wages and overtime premium due to time-shaving and an equal amount as liquidated damages.

65.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS</u>

66.     Plaintiff realleges and reavers Paragraphs 1 through 65 of this class and collective action Complaint as if fully set forth herein.

67.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

68.     Defendants willfully violated Plaintiff and Class members' rights by failing to pay them minimum wages in the lawful amount for hours worked.  As factually described above, Defendants were not entitled to claim any tip credits under NYLL with respect to the Tipped Subclass.

69.     Defendants willfully violated Plaintiff's and Class members' rights by failing to

pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours each workweek.

70.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff and Class Members for all hours that he worked each week.

71.     At all relevant times, Defendants unlawfully misappropriated tips earned by Plaintiff and the Tipped Subclass by charging customers who ordered delivery mandatory delivery fees, but failing to notify these customers that such fees were retained entirely by management, rather than by Plaintiff and the Tipped Subclass.

72.     At all relevant times, Defendants unlawfully misappropriated tips each by Plaintiff and the Tipped Subclass by implementing and mandating a tip-pooling scheme without the consent and approval of Plaintiff and the Tipped Subclass, whereby managerial and non-tipped employees were permitted to take from the tip pool.

73.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

74.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

75.     Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

76.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime premium, unpaid wages and overtime premium resulting from time shaving, misappropriated gratuities due to Defendants' policy of charging customers a delivery fee but failing to notify those customers that such fee was retained by management, misappropriated gratuities due to the

unlawful tip pooling scheme imposed by Defendants, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

77.     Plaintiff realleges and reavers Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

79.     Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

80.     Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of constant harassment about his race and national origin. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

81.     Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of age, Plaintiff is entitled to recover from Defendants: (1) compensatory damages.

## COUNT IV

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (GENDER DISCRIMINATION)

82.     Plaintiff realleges and reavers Paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's gender.

84.     Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

85.     Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of sexual harassment. Such harassment included inappropriate sexual comments, and unwelcome sexual touching. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

86.     Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of gender, Plaintiff is entitled to recover from Defendants: (1) compensatory damages.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

87.     Plaintiff realleges and reavers Paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

89.     Plaintiff is an employee and a qualified person within the meaning of NYCHRL

and Defendants are covered employers under the NYCHRL.

90.     Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of constant harassment about his race and national origin. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

91.     Due to Defendants' violations under the New York City Human Rights Law, as amended, based on discrimination on the basis of age, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

**COUNT VI**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

**(GENDER DISCRIMINATION)**

92.     Plaintiff realleges and reavers Paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's gender.

94.     Plaintiff is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

95.     Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of sexual harassment. Such harassment included inappropriate sexual comments, and unwelcome sexual touching. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

96.     Due to Defendants' violations under the New York State Human Rights Law, as

amended, based on discrimination on the basis of gender, Plaintiff is entitled to recover from

Defendants: (1) compensatory damages, (2) punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class

members, respectfully request that this Court grant the following relief:

      a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law, and the New York State Human Rights Law;

      b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

      c.  An award of damages to Plaintiff, retroactive to the date of his discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

      d.  An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

      e.  An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

      f.  An award of unpaid compensation due to Defendants' policy of time-shaving;

      g.  An award equal to the amount in gratuities misappropriated by Defendants due to Defendants' policies of neglecting to notify customers that all delivery fees

charges would be retained by management and implementing an unlawful tip pooling scheme;

h.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage, compensation for all hours work, and misappropriated gratuities pursuant to the New York Labor Law;

k.  An award of compensatory damages due under the New York State Human Rights Law;

l.  An award of compensatory damages due under the New York City Human Rights Law;

m.  An award of punitive damages due under the New York City Human Rights Law;

n.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

o.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

p.  Designation of this action as a class action pursuant to F.R.C.P. 23;

q.  Designation of Plaintiff as Representative of Class; and

r.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 4, 2016

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*
       C.K. Lee (CL 4086)